Good morning, Your Honors. May it please the Court. David Nafusi, Wilson-Sonsini, Goodrich and Mazzotti on behalf of Petitioner Stephanie Olmos. Your Honors, Ms. Olmos' oral argument will first focus on her family membership claim. As the credible evidence in the record establishes that Ms. Olmos was informed by her persecutors of the reasons of their persecution of her, specifically telling her, your father is not sitting well with us. He's looking down on us and that bothers me and you are going to foot the bill because we are the law here. She also received a telephone call from her persecutors informing her that, bitch, we're going to kill you like we killed that bitch your sister was. We already know where you are, bitch. We're going to rape you. And Ms. Olmos' father was also told by neighbors right before Ms. Olmos' decision to leave El Salvador that the 18th Street Gang was going to rape and kill Ms. Olmos. Is it sufficient for purposes of its being a protected ground that they're targeting the family irrespective of the reason that the gang is targeting the family? Let's say, for example, that we had a case in which there was a fairly wealthy family in town. The gang wants money from the family. The family refuses to provide money. The father is killed and now the daughter says, they're targeting me because I'm a member of the family and let's assume that that's true. Is that a sufficient nexus when the only reason for the targeting is a refusal to provide money? Your Honor, I see your question. And I think in contrast to our case here, I think we have more than just a targeting of one family member. In fact, I think if you look at the totality of evidence here, stretching over a two-year period, starting first with the death of Ms. Olmos' sister, followed by the fact that she was harassed, threatened, chased and assaulted in three different Salvadorian cities over that same two-year period, the fact that her father was beaten, had death threats and was shot. I don't think you're taking my point. I'm asking you whether it makes a difference the reason why the family is being targeted. No, Your Honor, I would say it doesn't. I think that there's been regardless And does our case law support you that it does not matter what the reason is that a family is targeted? Your Honor, I think that there needs to be something there, obviously. And I think what we have in our case is a reason that the fact that the family sought justice for the murder of a family member. That they went to the police, they reported this incident to the police, and they were working with the police on that. And therefore, the family became a target of the 18th Street Gang. And I mean, the reason I'm pushing you to get to that point, it does seem to me that it does make a difference the reason why the family members are being targeted. And now we have a reason. Yes, Your Honor. And it looks a little bit like, surprise, the Enriquez-Rivas reason. Yes, Your Honor. There are some analogies here. In fact, listening to the previous oral argument, when you noted that, you know, in addition to having a general version of the met with the police department. Attempted, you know, actually twice. And after two incidents, the death of the sister, and then the beating of the father, and the shooting at his house. And nothing became of those investigations, Your Honor. Well, I'm not sure that's quite right. The first investigator actually gets pretty close. And then he gets transferred. Yes, Your Honor. But when I say nothing became of it, we didn't have any formal charges or anything of that like. You're right, there was some actions. However, there was also a note that, I believe it was El Negro, had some friends within the police department there. And that the lead detective, Detective Escobar, ultimately was transferred from the case. Right. From which there's an inference, at least, that he was transferred because he was getting close to El Negro in the 18th Street van. Yes, he had been investigating. And the replacing investigator, after Escobar is gone, the father doesn't trust at all. Because he suspects he's too close, and, yeah, okay. So, yes, Your Honor, as I was saying, the totality of the record here, I think, is really what needs to be focused on. And not just, you know, the first incident. And in particular, looking at the BIA's decision, it is apparent that there were some clear errors of law in its analysis under the family membership claim. In particular, first, the BIA erred in holding that Ms. Olmos' father did not suffer persecution. And second, regardless of that, that's not the standard here in the Ninth Circuit. Ms. Olmos didn't need to demonstrate that her father suffered persecution to show that she, herself, suffered persecution on account of family membership. Third, Your Honors, Ms. Olmos' mother was not similarly situated to Ms. Olmos. She did not ultimately seek justice for Lisette's murder. She lives in a different colonia, and it's also remote, I might add, an hour away and controlled by a different gang. And, in contrast, Ms. Olmos is relatively confined to her home out of fear. Therefore, she's experienced no harm. The fact that she's experienced no harm does not cut against Ms. Olmos' family membership claim. And, again, like I said, I think in looking at the totality of the evidence here, I think it compels asylum in this case, Your Honors. I think that we've got a credible and established record over that two-year period in El Salvador where the events, in and of itself, what I would say is similar to this Court's decision in the Magoyan case of 1999, compels a finding for asylum. Now, as to the harm suffered by Ms. Olmos' father, the BIA held that although Ms. Olmos' father, and I quote, was repeatedly threatened by gang members and was even beaten on one occasion, he experienced no harm that would rise to the level of persecution. Your Honors, in its analysis, the BIA also failed to mention that Ms. Olmos' father had his life threatened on several occasions. And the gang came by in the November 2006 incident and took a gun and fired at his house. Fortunately, no one was hurt. However, this Court has held that, consistently held, I'm sorry, that death threats alone can constitute persecution. And that's from the novice decision from 2000. And here, Your Honors, we have death threats and more. So I would submit that though it's not the standard, I would argue that Ms. Olmos' father did suffer persecution. Well, I'm interested in your reliance on the Magoyan case in which we held that the family relationship supported the asylum claim, but the reason for discrimination against the family was a protected ground. Right. Yes, Your Honor. That is to say, I think it matters the reason why the family is being targeted. Yes, Your Honor. And I think that what we have here, and you are absolutely correct, is that the reason that the family was being targeted, as we discussed earlier, was because it was working with the police to seek justice for Liseth's murder. So I think we may be back to Enriquez Rivas. You may be in this case, Your Honor, just because, you know, the BIA did not have the footnote, however, you know, the fact that she held an anti-gang opinion does not qualify for asylum based on her membership in a particular social group. And it went on to cite Ramos Lopez and the Okabe case. However, I think here, in addition to Enriquez Rivas, I think that there's additional reasons to find asylum. And I think that, you know, as I mentioned, I think there's a clear error of law in its almost to demonstrate that her father suffered persecution. And there's been no Ninth Circuit opinion that has held that for a family membership claim. Let me clarify your argument. With regard to social group, the BIA in this particular case did recognize that membership in the family is a cognizable social group. So your argument is where they erred is in analyzing whether the persecution actually was on a protected ground. Your Honor, yes, to a certain extent. However, it's really unclear from the opinion what the BIA was really addressing. They seem to just suggest that the father, and if you look at the, on page, starting at the page two at the bottom paragraph, they know, responded also to search eligibility for asylum and withholding of removal on account of her family membership. And they go on to say, well, such ties can provide sufficient basis for granting it. The, that's not the situation here. And they talk about the father experienced no harm that rose to the level of persecution. Well, and what I'm getting at, Counsel, if the BIA says that her membership in this family who held anti-gang views and cooperated with law enforcement in the murder investigation is a cognizable social group, but then found that the record evidence doesn't support the fact that they were persecuted because of it, and they relied on the fact that the mother and the father weren't persecuted after she left El Salvador. And we find out that substantial evidence, or we agree that substantial evidence doesn't support those particular findings, and the remedy is a grant of the petition and not a remand for them to reconsider Enriquez-Rivas. Am I understanding your argument, Counselor? Yes, Your Honor. And the BIA's finding with regard to the mother, your argument is that that's not supported because the mother is not similarly situated. Yes, Your Honor. And then with regard to the dad, the evidence doesn't support the BIA's findings because he, in fact, continued to suffer persecution. Yes. And he also didn't even demonstrate that he suffered persecution on account of a protected ground. Now, the father's dead. At what point during this sequence did he die? In 2008, Your Honor. So our client left for the United States in May 2007, and he died in 2008. And I recognize that... So the evidence of continuing mistreatment of the father obviously cuts off at his death. That's correct. And we do know some mistreatment of the father while she's still there. Yes, Your Honor. And there were subsequent incidents after she left of some threats and, you know, word around the street that was on the record here. Directed toward the father? Yes, Your Honor. Okay. Why don't we hear from the government, and we'll give you a chance to respond. Thank you, Your Honor. I appreciate it. May it please the Court, Elizabeth Perlin for the United States Attorney General. Welcome back. Thank you. Your Honor, the dispositive determination in this case as to asylum is that Petitioner failed to establish that an express or imputed political opinion is one central reason for the harm that she fears from gang members following the death of her sister. There's no nexus between the harm that Petitioner fears, which is attributed to criminal activity in El Salvador, and any statutorily protected ground. Further, the substantial evidence supports the Board's determination that Petitioner failed to establish that gang members persecuted her on account of her membership in a particular social group consisting of her family. How about a social group of people who are actively pursuing justice against the gang? And indeed, sounds as though they would be absolutely willing to testify if Escobar had been permitted to continue the investigation, and had then brought it to the point where it comes to court. That question remains open in this case, Your Honor, because Petitioner never raised that claim, that particular social group claim. She never specified before the immigration judge that she belonged in a claimed group of those who would serve as witnesses against the gang. She was represented by counsel throughout those proceedings. That particular social group was never specified on appeal to the Board. Well, you know, sometimes we remand for consideration in light of later decided cases when the issue may be, a competent lawyer might not have raised it until you get the later case. I understand, Your Honor. I do, but our response to that is that the agency never had, Petitioner always had the opportunity to file a motion to reopen before the Board based on, in light of new case law. She is not elected to do so. My point was the petition for review filed with us in relation to when Henriquez-Rivas was decided. The petition for review was filed with this Court before Henriquez-Rivas was decided. What about the social group that she did raise, which is on account of her family membership, and that was specifically discussed by the BIA? Yes, Your Honor. I do, with regards to that determination, the Board found, accepted the fact, contrary to Petitioner's contentions, the Board did accept the fact that it was a particular social group, that it was a cognizable group. However, it found that she had not established, that she was persecuted, she had not established a well-founded fear for purposes of asylum based on her membership in that group. And as facts indicating that, the Board noted that her mother continues to reside in the house that they are without leave. Right, and that's the question I asked counsel, and I want you to address the same question. The BIA said that the father was repeatedly threatened by gang members and even beaten, but experienced no harm that would rise to the level of persecution, and the mother has not been subjected to any harm by gang members. If we find that substantial evidence doesn't support that, then should the panel consider remanding in light of Henriquez-Rivas, or is it an outright grant of the petition because the BIA's findings were not supported by substantial evidence? Well, Your Honor, I would say with regard to the first question of your first question, whether remand would be based on Henriquez-Rivas, that based on the claim of family, that would not be appropriate considering that the Board already accepted that her family was a particular social group. Now, with regards to whether compelling evidence supports that determination, I would say that it does, because with regards to that, the Board's observation regarding the father, that was important to, and that was relevant in considering whether her fear of returning to El Salvador was objectively reasonable. There's no doubt here that she subjectively fears it, but the situation of similarly situated family members residing there and not having experienced harm that would rise the levels of persecution. But I thought the evidence shows that the persecution of her father continued during the, I believe it was 15 months, and then he passed away. I disagree with that. I would say that the record indicates through her testimony and through her father's affidavit that actually the one incidence that this claim is mostly based on is the encounter in 2006 that he had with El, I think his name is El Gato, one of the gang members, because that individual was actually propositioning Petitioner, and her father had come out and said, leave her alone. And then they got into a fight. Both she and the father struggled with the two, the three gang members. She held one in a headlock and she said, you know, leave, leave, leave, leave me alone. And her father fought with the other gang member. He ran into the house to get a knife. He ran back out. They had already left and threatened to come back, and they shot at his house. Now the other instances that Petitioner has, that Petitioner has testified to and that the father has stated about in his affidavit after she left from the United States actually deal with instances where he's come in contact and he's said to them, you know, I don't like you or I don't, you know, I don't agree with what you're doing or whether he has made, those are his personal opinion or personal confrontations, but there is no significant, there has not been since she left any significant encounter between her father and the, and the gangs. But it didn't last very long. And of course, if we're talking family membership and it's sufficient, and I'm tempted to agree with Judge Nguyen because I'm just reading at the bottom of page two of the BIA order, the court, the BIA says, well, the respondent asserts eligibility on account of her family membership. Well, such ties could provide a sufficient basis. That's not the situation here. And then they go into, okay, it was not bad enough. So I'll take the BIA at its word that, okay, we're talking, there is a sufficient nexus based simply on family membership. Well, she doesn't need to show anything that rose to the level of persecution of her father. What she needs to show is that she has a well-founded fear that she will herself be persecuted. Well, we have the sister already being killed. We have some bad treatment of the father. He dies, so we don't know whether it's going to continue past 2008. We have very explicit threats to her that we're going to come and that strikes me as enough for a well-founded fear. And none of the evidence I've just given you has contested it. Your Honor, in listening to your question, I want to separate the two concepts. I want to separate the concept of nexus, which is at issue in this case, with the idea of particular social group consisting of her family. Well, if the BIA says the social group is the family, that is the nexus. If they say this is the family and that's enough, that's the nexus. That's what the BIA just told me. And then they say, but the harm isn't sufficient. They don't say there's insufficient connection because there's no nexus to the family. They're saying that we think the family is not in danger. I read instead, Your Honor, I read the decision as saying that there is no nexus to protected ground. Aside from the nexus, here's your social group claim. Let me read to you the paragraph that Judge Wynn was originally referring to, and then we'll see what the BIA seems to mean in that paragraph. It's the paragraph that begins at the bottom of page 2 of the BIA order, dated July 31, 2009. Are you with me? Okay. BIA writes, The Respondent also asserts eligibility for asylum and withholding on account of her family membership. While such ties could provide a sufficient basis for granting this form of relief, that is not the situation here. And now they go on to say, as to why this isn't the situation, reasons why the harm isn't serious or threatened. The Respondent's father was repeatedly threatened by gang members and was even beaten on one occasion, but he experienced no harm that would rise to the level of persecution. There's also no evidence to demonstrate that the Respondent's mother has been subjected to any harm by gang members. And in the view of the Respondent's inability to distinguish her situation from her other family members, i.e., mom and dad, we shall affirm the denial. Yes. Well, it sounds as though the BIA is quite willing to accept nexus, that is to say, this is family. And they're saying this is not the situation here because there's insufficient threat of harm. Your Honor. How did I just misread the paragraph? I read it differently, Your Honor. I read it as the Board saying that we, that nexus, you've still not proven nexus. Similar to what the conclusory paragraph in Henriquez-Rivas states. You have not, nexus was not, nexus is a separate issue. You have not proven nexus. Now, with regards to your social group claim, yes, we recognize that family is a cognizable particular social group. But is that, is what, but we still have to determine whether your fear for future persecution is objectively reasonable. And the facts of what has happened to the Well, now you and I are on the same page. The question is whether the fear is objectively reasonable. Yes. And the BIA says it's not because the father, after a while, wasn't hurt anymore and the mother was never hurt. Right. But I can look at the evidence and I can say, well, the father died in 2008. She's repeatedly threatened with death. Her sister was killed. And say, you know what, I don't think the degree of threat is properly. Well And that that's not a nexus question. That's the degree of harm or threat. Yes, Your Honor. And I agree with that. That is how I read it. I see my time is out. May I close? Petitioner has failed to show that the evidence of record compels the sole conclusion that a protected ground will be at least one central reason for the harm she fears. Thank you. Thank you. Would you like a minute? Yes, Your Honor. Thank you. Your Honor, to go back to that paragraph in question, I think it's worth noting that the word nexus is not mentioned even once in that. However, also, in looking at the BIA, it's also focusing on that paragraph. And, you know, they cite Santos-Limas in that paragraph. And I think this case, as I noted in our supplemental briefing, is distinguishable for several reasons. We noted that, one, the mother lives an hour away. And Santos-Limas had siblings who were also living an hour away and were not considered by the court. The court focused on the mother, in that matter, who was living in the same hometown and the fact that the mother did not suffer harm. Here, we have a mother who was living over an hour away. We sit in a remote colonia controlled by another gang that has not suffered harm. And I think that's worth noting, Your Honors. Also, I think my respected colleague kind of downplayed the – and tried to make this more about an isolated incident in November 2006. Your Honor, we've got a record here that notes kind of following after the death of Petitioner's sister, there were instances in two – or, I'm sorry, three different cities over a two-year period, not just that one incident in November 2006. And that goes on the parking lot and following around. Yes, Your Honor. And there was, you know, the phone call and just – there were – and like I said, you know, I think it's important to look at the totality of the record here. Thank you, Your Honor. Thank you. Thank both sides for your arguments. Olmos-Baja v. Holger submitted for decision.
judges: Tashima, Fletcher, Nguyen